**Erjon PACAJ, Petitioner,**

v.

**Alberto R. GONZALES,\* Respondent.**

**No. 03–40924–ag.**

United States Court of Appeals, Second Circuit.

May 2, 2006.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

Carl M. Weideman, III, Weideman & Weideman, P.C.; Grosse Pointe Woods, Michigan, for Petitioner.

Julie Ann Woods, Assistant United States Attorney, for Margaret M. Chiara, United States Attorney for the Western District of Michigan; Grand Rapids, Michigan, for Respondent.

PRESENT: Hon. PIERRE N. LEVAL, Hon. B.D. PARKER, Circuit Judges, and Hon. WILLIAM K. SESSIONS III,** Chief District Judge.

### SUMMARY ORDER

Petitioner Erjon Pacaj, a citizen of Albania, petitions for review of an order of the Board of Immigration Appeals ("BIA"), af-

** The Honorable William K. Sessions III, Chief United States District Court Judge for the

firming without an opinion a decision of Immigration Judge ("IJ") Philip L. Morace denying relief essentially on credibility grounds. File No. A79–317–985. Familiarity with the record below and issues on appeal is presumed.

When the BIA summarily affirms, we review the decision of the IJ directly. *Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 189 (2d Cir.2005). We defer to an IJ's factual finding "if it is supported by reasonable, substantial and probative evidence in the record when considered as a whole." *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003)(*per curiam* )(internal quotation marks omitted). We have cautioned, however, that "the fact that an IJ considers a petitioner not to be credible constitutes the beginning not the end of our inquiry." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (quoting *Aguilera–Cota v. INS,* 914 F.2d 1375, 1381 (9th Cir.1990)). When an IJ rejects an asylum applicant's testimony, "the IJ must provide specific, cogent reasons for doing so." *Id.* (internal quotation marks omitted). Our review "is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Zhou Yun Zhang v. INS,* 386 F.3d 66, 74 (2d Cir. 2004).

We are troubled by each of the reasons given by the IJ for denying Pacaj's application. The IJ stated that, based on the inconsistencies between his testimony and his asylum application, "I find that the testimony cannot rise to that level of believability, consistency, and detail to provide him with a plausible and coherent account." IJ Decision at 10. However, Pacaj's testimony and his asylum application are consistent. Pacaj tes-

District of Vermont, sitting by designation

tified that he was heavily involved in political activity in Albania, that because of this activity he was physically assaulted on two occasions, that he arrived in the United States in December 2000, and that he fears persecution if he is required to return to Albania. The IJ did not identify any material inconsistencies among Pacaj's statements. We find any potential discrepancies that might exist to be far from significant and numerous, but rather insignificant and trivial. *See Secaida–Rosales,* 331 F.3d at 308; *Diallo v. INS,* 232 F.3d 279, 288 (2d Cir.2000); *Ramsameachire v. Ashcroft,* 357 F.3d 169, 180 (2d Cir.2004); *Ming Shi Xue v. BIA,* 439 F.3d 111, 120–21 (2d Cir.2006) (distinguishing between minor discrepancies and those inconsistencies that relate to "the heart of the asylum claim").

Moreover, the IJ similarly failed to engage or evaluate Pacaj's explanations for possible discrepancies. For instance, when asked, in the course of testifying about an assault, how he saw his assailant if he was hit from behind, Pacaj explained that the force of the blow threw him down backwards, and he was able to see his assailant when he fell backward. The IJ instead focused on Pacaj's testimony that he was hit from behind and found his testimony impeached by noting that it would be impossible to see what the attacker was wearing. *See* IJ Trial Trans. at 37. Also, contrary to the IJ's findings, Pacaj's testimony was not conclusory or devoid of detail. For example, when the IJ questioned Pacaj on why authorities in Tirane would be looking for him, he explained that he had [observed the elections] PNL SUGGESTION organized a large contingent of the demonstrators so he was sought by the authorities. *See* IJ Trial Trans. at 32–34. Pacaj also testified in some detail on the election irregularities he observed in Albania. *See* IJ Trial Trans. at 21–25. Thus, the IJ's credibility determinations were simply not grounded in substantial evidence. *See Secaida–Rosales,* 331 F.3d at 308; *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 403 ("Although the IJ was not required to credit [petitioner's] explanations even if they appear plausible on a cold record ... [the IJ] was required to take those explanations into account.... Absent a reasoned evaluation of [petitioner's] explanations, the IJ's conclusion that his story is implausible was based on flawed reasoning and, therefore, cannot constitute substantial evidence supporting [the IJ's] conclusion." (internal citations omitted)).

■ The improperly based credibility finding also affected the IJ's conclusion that Pacaj did not apply for asylum within one year of his arrival in the United States. Pacaj's testimony concerning his timely submission was reinforced by documentary evidence to the effect that he was an election observer in Albania in November 2000. He applied for asylum six months later. Because the IJ's adverse credibility finding with respect to his activities in Albania in Fall 2000 is not supported by substantial evidence, the conclusion that Pacaj's May 2001 application for asylum was untimely "is based on an inaccurate perception of the record," "omit[s] potentially significant facts," and must be vacated. *Tian–Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004).

■ Nor is affirmance required by reason of the IJ's finding of changed circumstances in 1992–97 upon the unseating of the Communist regime. If on remand Pacaj's testimony about being beaten by the Albanian authorities in 1999 and 2000 because of his involvement in political activities is found credible, then Pacaj will have established a new instance of persecution subsequent to the displacement of the Communist regime. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b)(1).

The government then will have the burden of showing by a preponderance of the evidence that circumstances have changed since November 2000, such that Pacaj does not have a well-founded fear of future persecution, *see Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 148 (2d Cir.2003).

Given the multiple errors in the IJ's analysis, we cannot say he would have reached the same result had they not been made. *Xiao Ji Chen v. U.S. DOJ*, 434 F.3d 144, 158 (2d Cir.2006). Accordingly, we remand to the BIA for reevaluation of Pacaj's claims for asylum and withholding of removal in light of this opinion. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

The petition for review is therefore GRANTED, the final order of removal is VACATED, and the case is REMANDED to the BIA with instructions to remand to an IJ for further proceedings consistent with this opinion. Because the IJ's ruling on Pacaj's application for withholding of removal under the INA and the CAT was also based, at least in part, upon the adverse credibility determination, we vacate and remand with respect to these two claims as well.